UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MICHAEL IOSIF TILMAN and
EMILY ISRAEL OLIN,

                  Plaintiffs,                  08 Civ. 2231 (CM) (DCF)

         v.

UNITED STATES,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8 3 09
```

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

McMahon, J.:

*Pro se* plaintiffs Michael Iosif Tilman ("Tilman") and Emily Israel Olin ("Olin")

(collectively, "plaintiffs") bring this lawsuit against the Commissioner of Internal Revenue

("Defendant" or "Government")[1] to recover a tax refund for an alleged overpayment of $5,761 in

income tax and $646.14 in interest after an Internal Revenue Service ("IRS") audit of plaintiffs'

2001 tax return.  Plaintiffs allege that the IRS improperly adjusted or disallowed several of their

reported business expenses and non-monetary charitable deductions.

      The Government moves for summary judgment on plaintiffs' claim, except to the extent

that plaintiffs' claim pertains to donations to Goodwill Industries of Greater New York and

Northern New Jersey, Inc. ("Goodwill") in the amount of $1,306, and $95.66 in self-employment

---

[1] A suit for recovery of internal revenue tax "may be maintained only against the United States and not against any officer or employee of the United States . . . ."  26 U.S.C. ("I.R.C.") § 7422(f)(1); see, e.g., Columbia Marine Servs., Inc. v. Reffert Ltd., 861 F.2d 18, 22 (2d Cir. 1988). Accordingly, the caption of the case is amended to substitute the United States as defendant.  See I.R.C. § 7422(f)(2).

Copies mailed/faxed/handed to counsel on  8/3/09

tax assessed against Tilman.  The Government contends that, minus the aforementioned

exceptions, plaintiffs cannot sustain their burden of proving their entitlement to a tax refund

because (1) the disputed business expenses are either nondeductible under the tax law or

inadequately substantiated, and (2) plaintiffs failed to obtain an appraisal prior to a large

donation of furniture, as required by Treasury Regulations.

For the reasons that follow, the Government's motion for partial summary judgment is

granted.

### Factual Background[2]

Plaintiffs are married and own an 800 square foot, two-bedroom apartment at 333 East

80th Street, New York, New York.  (Def. Rule 56.1 ¶ 1.)  They have owned the apartment since

1995, and it was their sole residence during the 2001 tax year.  (Id. ¶ 4.)  At the time, Tilman was

an engineer at Halm Industries, Inc., (id. ¶ 5), and Olin was a voice coach and piano accompanist

who worked with students and musicians in the apartment.  (Id. ¶ 6.)  Olin conducted rehearsals

or gave lessons in the living room ("Emily's Studio"), where her grand piano was located, and

she used one of the two bedrooms ("Emily's Office") to house a computer desk, library, DVDs,

and compact discs.  (See id. ¶ 7.)

---

[2] The following facts come from the Government's Rule 56.1 Statement, which it submitted
pursuant to Local Rule 56.1.  The Government also complied with Local Rule 56.2, which, in
short, requires a represented party to serve and file notice on a party proceeding *pro se* that
advises the *pro se* litigant that he cannot simply rely on the allegations in his complaint in
opposing summary judgment, but that the *pro se* litigant must submit some evidence raising
issues of material fact for trial.  Plaintiffs failed to file a Rule 56.1 Statement in opposition to the
Government's motion for summary judgment, and the papers that they did submit, even read
liberally, raise no issue of contested fact based on the Government's Rule 56.1 Statement.
Accordingly, all the averments of fact in the Government's Rule 56.1 Statement—though not the
conclusions the Government draws therefrom—are deemed admitted.  Holtz v. Rockefeller &
Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001); Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F.
Supp. 2d 569, 574 (S.D.N.Y. 2004).

On their Form 1040 for the tax year 2001, plaintiffs reported a business loss of $11,375, and itemized deductions of $39,732. (Id. ¶¶ 12-13.) Plaintiffs claimed a refund of $9,843. (Id. ¶ 14.) On their Schedule C (Profit or Loss from Business), plaintiffs claimed deductions of $1,429 for office expenses (Line 18), $212 for repair and maintenance expenses (Line 21), and $20,064 for other expenses (Line 27). (Id. ¶ 15.) The "other expenses" category was divided into nineteen subcategories, including, *inter alia*, clothing, meals, computer and travel expenses. (Id. ¶ 16.) Plaintiffs' Schedule A itemized deductions included non-cash contributions in the amount of $15,558. (Id. ¶ 17.) On Form 8283 (Noncash Charitable Contributions), plaintiffs reported that these donations consisted of furniture and clothing. (Id. ¶ 18.)

The IRS audited plaintiffs' 2001 tax return. (Id. ¶ 19.) By Notice of Deficiency dated April 2, 2004, the IRS disallowed or adjusted several of plaintiffs' reported business expenses and itemized deductions. (Id. ¶ 20; Declaration of Joseph N. Cordaro (hereinafter, "Cordaro Decl.") Ex. H.) With respect to Schedule C, the IRS allowed $752 of plaintiffs' reported $1,429 in office expenses, the entirety of plaintiffs' reported $212 in repair and maintenance expenses, and $6,543 of plaintiffs' reported $20,064 in other expenses. (Def. Rule 56.1 ¶ 21.) With respect to Schedule A, the IRS allowed $997 of plaintiffs' reported $15,558 non-cash contributions. (Id. ¶ 22.) In addition, the IRS computed self-employment tax for Tilman in the amount of $95.66 and for Olin in the amount of $1,029.20. (Id. ¶¶ 23-24.) The IRS assessed $5,761 in additional tax and $646.14 in interest. (Id. ¶ 25.)

On November 1, 2004, plaintiffs paid the full amount of tax and interest assessed. (Id. ¶ 26.)

3

On December 20, 2004, plaintiffs filed a Form 12661 (Disputed Issue Verification) (id. ¶ 27) claiming that the IRS's Notice of Deficiency erred in four ways: (1) it incorrectly assessed self-employment tax of $95.66 to Tilman; (2) it did not provide plaintiffs with procedures for filing suit in court; (3) it did not provide information about the IRS's disallowances of certain "other expenses" in Schedule C; and (4) it improperly disallowed deductions for plaintiffs' non-cash donations. (Id. ¶ 28.)

On December 21, 2004, plaintiffs filed a Form 1040X and an amended Form 1040. (Id. ¶¶ 29-30.) The Form 1040X that plaintiffs filed contains other documentation (purchase receipts and orders, credit card statements, and word processing tables that the plaintiffs prepared) for their expenses and deductions. (Id. ¶¶ 30-34; Cordaro Decl. Ex. M-Q.) On their amended Form 1040, plaintiffs report a business loss of $18,753 and itemized deductions of $39,026. (Def. Rule 56.1 ¶¶ 36-37.) Plaintiffs also amended their Schedules C and A as follows:

## Schedule C

| Line | Original | IRS Allowance | Amended |
|------|----------|---------------|---------|
| 18. Office Expense | $ 1,429 | $   752 | $ 5,331 |
| 21. Repairs and Maintenance | $   212 | $   212 | $ 8,475 |
| 27. Other Expense | $20,064 | $ 6,543 | $20,415 |

## Schedule A

| | | | |
|------|----------|---------------|---------|
| 16. Non-cash gifts to charity | $15,558 | $   997 | $14,299 |

(Id. ¶¶ 39, 50.)

## Schedule C

Plaintiffs' office expense deduction in their Amended Schedule C includes the items they listed in their original 2001 tax return and new items. (Cordaro Decl. Ex. A (hereinafter, "Tilman Dep.") at 107:8-13.) Plaintiffs claim a "home-office" deduction for their purchase of a

(1) rug ($161.29), (2) cabinet for glasses and bottles ($215.42), (3) air conditioner ($692.74), (4)

blinds ($480.00), (5) coffee table ($248.97), (6) floor lamp for piano ($199.00), (7) carpet

($120.00), (8) curtains ($186.19), (9) bookshelves and CD shelves ($1217.26), (10) computer

desk ($172.52), (11) accessories ($77.74), (12) file cabinet ($139.97), (13) delivery service for

office ($107.42), (14) pencil sharpener ($21.44), (15) tape ($6.39), (16) office chair ($411.35),

(17) candleholder ($7.52) and (18) studio arm chair ($541.00). (Cordaro Decl. Ex. M.) Most of

these items were used to furnish Emily's Studio and Emily's Office. (Def. Rule 56.1 ¶ 39.)

Plaintiffs' $8,475 claim for repairs and maintenance, which is an increase of $8,263 over

their original return, includes (1) repairs of a lock ($265.21) and camera ($118.27), plumbing

expenses ($391.07), and fifty percent of the total costs of renovations for both Emily's Studio

($4,800) and Emily's Office ($2,900). (Id. ¶ 40.)

The rest of plaintiffs' business expense deductions are listed under the label "Other

Expense." (Id. ¶ 41.) Under this category, plaintiffs claim a total of nineteen deductions for

Olin's business:

| Concert outfits | $4,615 |
|---|---|
| Piano Tuning | $ 285 |
| Business Calls | $1,033 |
| Xerox | $ 100 |
| Postal Service | $ 115 |
| Laundry and Cleaning | $ 278 |
| Business Dinners | $1,057 |
| Gifts | $1,064 |
| Haircuts and Manicures | $1,800 |
| Taxi | $ 430 |
| Airline Tickets | $ 760 |
| Subway and Bus | $ 75 |
| Recording Equipment | $1,443 |
| Books and Music | $ 409 |
| Cell phone | $ 830 |

| Computer, Software, Internet | $2,573 |
| Membership | $2,569 |
| Video Rental | $   44 |
| Opera Performance Attendance | $  935 |

(Cordaro Decl. Ex. R at US0080-81.)

Schedule A

Plaintiffs' non-cash gifts to charity on their Amended Schedule A consist of two charitable donations. In September 2001, plaintiffs donated every piece of furniture in their apartment, except for their grand piano, to the Jewish Community Council of Rockaway Peninsula ("JCC"). (Id. ¶ 51-52.) On their amended return, plaintiffs claim a deduction of $11,995 for their JCC donation. Plaintiffs submitted a letter from the JCC dated October 15, 2001, which acknowledges their donation of furniture and attaches a list of the donated furniture that was previously generated by Tilman. (Cordaro Decl. Ex. Q at US0072-0074.) The list of furniture does not contain a valuation of the items donated. (See id.) Tilman testified that he did not have the furniture appraised before donating it. (Tilman Dep. at 157:11-13.) However, after the IRS audit, plaintiffs prepared a spreadsheet that lists the estimated the value of each item of furniture on the JCC list. (Cordaro Decl. Ex. Q at US0075.)

On their Amended Schedule A, plaintiffs also claim a deduction of $1,306 for their donation of clothing and a plastic rack to Goodwill. (Def. Rule 56.1 ¶ 55.)

On March 13, 2006, Tilman met with Samantha Mangiaracina ("Mangiaracina") of the IRS, who had performed the audit. (Id. ¶ 56.) During the meeting, Mangiaracina gave Tilman an opportunity to explain "all [his] writings, what [he] did, what [he] changed, why [he] did this." (Id. ¶ 57.) By letter, dated the same day, the IRS disallowed plaintiffs' additional deductions. (Id. ¶ 58.) The letter states that the reason for the disallowance: "Taxpayer did not

6

submit additional documents." (Cordaro Decl. Ex. T at US0135.) Tilman alleges that he did not
receive this letter until 2008. (Tilman Dep. at 167:17-22.)

On March 6, 2008, plaintiffs commenced this lawsuit for a tax refund of $6,407.14,
pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. ("I.R.C.") § 7422(a). In their complaint,
plaintiffs allege that (1) they submitted additional documents to the IRS with their Form 1040X,
(2) the IRS incorrectly assessed a self-employment tax to Tilman, who has never been self-
employed, (3) the IRS did not accept their furniture donation, (4) the IRS did not send the final
notice of disallowance until eighteen months after Tilman's interview with Mangiaracina, and (5)
the IRS did not explain each item that would be changed in their amended tax return. (Compl. at
6.)

## *Discussion*

### I.    **Standard of Review**

#### A.    **Summary Judgment**

A party is entitled to summary judgment when there is no "genuine issue of material fact"
and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ.
P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing a motion for
summary judgment, "the court must view the evidence in the light most favorable to the party
against whom summary judgment is sought and must draw all reasonable inferences in [its]
favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
Whether any disputed issue of fact exists is for the court to determine. Balderman v. United
States Veterans Admin., 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial
burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477
U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present

"specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party

opposing summary judgment "may not rely on conclusory allegations or unsubstantiated

speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, not every

disputed factual issue is material in light of the substantive law that governs the case. "Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude summary judgment." Anderson, 477 U.S. at 248. Finally, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the material

facts." Matsushita Elec. Industries Co., 475 U.S. at 586. To withstand a summary judgment

motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the

nonmovant.

When the nonmoving party is *pro se*, the Court judges its pleadings by a more lenient

standard than that accorded to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S.

519, 520 (1972). Proceeding *pro se*, however, "does not otherwise relieve [plaintiffs] from the

usual requirements of summary judgment." Fitzpatrick v. The N.Y. Cornell Hosp., 00 Civ. 8594,

2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003) (citing cases).

## B.    Tax Refund Actions

"The basic rule of federal sovereign immunity is that the United States cannot be sued at

all without the consent of Congress." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands,

461 U.S. 273, 287 (1983). For income tax refund actions, Congress has waived sovereign

immunity. See 28 U.S.C. § 1346(a)(1); Monti v. United States, 223 F.3d 76, 78 (2d Cir. 2000).

In a tax refund lawsuit, "it is incumbent upon the claimant[s] to show that the United States has

money which belongs to [them]." Lewis v. Reynolds, 284 U.S. 281, 283 (1932) (citations and

internal quotation marks omitted). "[T]he burden of proof is on the taxpayer[s] to prove an

8

overpayment of tax, *and* the amount [they are] entitled to recover." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal citations omitted) (emphasis added). IRS tax assessments are presumptively correct, "and the taxpayer who sues for a refund has the burden of persuading the factfinder by a preponderance of the evidence that the assessment is not correct." Apollo Fuel Oil v. United States, 195 F.3d 74, 76 (2d Cir. 1999). Pursuant to the IRS Restructuring and Reform Act of 1998, I.R.C. § 7491(a), the burden of proof shifts to the Government "with respect to any factual issue related to a taxpayer's tax liability if they maintained adequate records, satisfied applicable substantiation requirements, cooperated with [the IRS], and introduced during the court proceeding credible evidence on the factual issues." Gutierrez v. Comm'r, T.C. Memo. 2003-321, 2003 WL 22725296, at *2 (T.C. Nov. 20, 2003); see also Thompson v. Comm'r, 499 F.3d 129, 133 (2d Cir. 2007). If these requirements are not satisfied, the burden remains on the taxpayer. Gutierrez, 2003 WL 2272596, at *2; Prince v. Comm'r, T.C. Memo. 2003-247, 2003 WL 21957994, at *2 (T.C. Aug. 18, 2003).

## II. Plaintiffs Are Not Entitled to a Tax Refund For Their Amended Schedule C Deductions.

The disputed expenses in plaintiffs' Amended Schedule C fall into three categories: (1) office expenses (Line 18); (2) repair and maintenance expenses (Line 21); and (3) other expenses (Line 27). Plaintiffs are not entitled to any of the deductions that they claimed on their Amended Schedule C.

### A. Office Expenses (Line 18)

Plaintiffs claim $5,331 in "office expense" deductions on their Amended Schedule C for Emily's Office and Emily' Studio, which is $3,902 more than the amount they originally claimed on their 2001 tax return. They argue that they are entitled to this deduction because they needed to buy all eighteen items listed on their Amended Schedule C to run Olin's business out of their

9

apartment during the 2001 tax year. The Government argues that plaintiffs are not entitled to the additional $3,902 deduction because Emily's Office and Emily's Studio do not satisfy the requirements for a "home-office" deduction, pursuant to section 280A.

The Government is correct. Plaintiffs fail to establish their entitlement to a deduction of office expenses in conjunction with Olin's home office under section 280A.

Section 162(a) of the I.R.C. allows a taxpayer to deduct all of "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." I.R.C. § 162(a); Schaeffer v. Comm'r, T.C. Memo. 1994-227, 1994 WL 199226, at *5 (T.C. May 23, 1994). "An expense is ordinary for purposes of this section if it is normal or customary within a particular trade, business, or industry. An expense is necessary if it is appropriate and helpful for the development of the business." Langer v. Comm'r, T.C. Memo. 2008-255, 2008 WL 4876819, at *2 (T.C. Nov. 12, 2008) (internal citations omitted). However, there are a number of limitations and requirements for that type of deduction. Section 262 precludes deductions for "personal, living, or family expenses." I.R.C. § 262; Schaeffer, 1994 WL 199226, at *5. "Furthermore, section 280A narrows the general deductibility rule of section 162 when deductions are claimed for the expenses of an office in the home." Schaeffer, 1994 WL 199226, at *5. A taxpayer may only deduct expenses attributable to the business use of his home if he qualifies for one of the statute's exceptions to disallowance. See Comm'r v. Soliman, 506 U.S. 168, 173 (1993).

The relevant exception to disallowance, in this case, is section 280A(c)(1):

(c) (1) Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

- (A) as the principal place of business for any trade or business of the taxpayer,
- (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or
- (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

I.R.C. § 280A. "To qualify for a home-office deduction [under section 280A], a taxpayer must show that the office in his residence '*is exclusively used on a regular basis*' as his 'principal place of business.'" Weissman v. Comm'r, 751 F.2d 512, 514 (2d Cir. 1984) (citing I.R.C. § 280A(c)(1)) (emphasis added). The phrase "exclusively used on a regular basis" means the taxpayer must show that his home office "is one that not only is vital to [his] business or employment but also has *no use but office use*." Cadwallader v. Comm'r, 919 F.2d 1273, 1275 (7th Cir. 1990) (emphasis added). In other words, a taxpayer who uses his residence for "both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test." Weissman, 751 F.2d at 515-16 (internal citation omitted).

Here, plaintiffs cannot claim a deduction for the items they bought for Olin's home office (i.e., Emily's Studio and Emily's Office), because they fail to substantiate that Olin's home office was used exclusively for business purposes. The eighteen items plaintiffs bought were put in either Emily's Studio or Emily's Office. The majority of the items (the rug, cabinet for glasses and bottles, air conditioner, blinds, coffee table, floor lamp for the piano, studio arm chair, and candleholder) were put in Emily's Studio. (Tilman Dep. at 107:19-110:12). Although Olin

11

used both of these rooms for her business, it is undisputed that plaintiffs also used the rooms for other purposes. Tilman testified that plaintiffs' daughter, Lina Tilman ("Lina") used Emily's Office and Emily's Studio when she stayed at her parents' apartment in 2001. For example, Lina used Emily's Office as her bedroom when she visited her parents, sleeping on the couch. (Id. at 28:10-29:7, 35:14-20.) Tilman used Emily's Office for his own personal use too. He read books in there and used the office's computer for his own work. (Id. at 52:11-53:8.) When Olin was not giving lessons, plaintiffs watched television in Emily's Studio, including news broadcasts, comedies and sports. (See id. at 42:2-43:17.) In addition, plaintiffs entertained friends socially in that room, including friends who had no connection with Olin's business. (See id. at 48:2-49:14.) In sum, plaintiffs used Emily's Office and Emily's Studio for both business and pleasure. Accordingly, they cannot claim a deduction for items bought for these rooms. See, e.g., Bestor v. Comm'r, T.C. Summ. Op. 2002-78, 2002 WL 1825352, at *3 (T.C. June 27, 2002) (denying a deduction for supplies because the home office was not used exclusively for business purposes).

Plaintiffs also fail to show that the items they bought were necessary for Olin's business. Plaintiffs submit the receipts for the items they bought and make self-serving assertions that Olin needed to buy the items that she did for her business. However, they do not explain why Olin's business needed to buy the items. There is no evidence that substantiates plaintiffs entitlement to a business expense deduction under section 162. Cf. Langer, 1994 WL 199226, at *5 (allowing a deduction when the taxpayer submitted evidence of the business purpose of the items purchased, and denying a deduction when he did not).

Nonetheless, plaintiffs argue that they are entitled to the full amount of their office expense deduction because the IRS failed to follow proper procedures in making a determination about their amended return. Plaintiffs contend that the IRS made two errors: (1) its April 2, 2004

12

notice of deficiency was inadequate; and (2) its March 13, 2006 notice of disallowance was wrong.

April 2, 2004 Notice of Deficiency

Plaintiffs contend that the IRS's statutory notice of deficiency was improper because it failed to provide them with an adequate explanation for why the full amount of their office expense deduction was disallowed (the IRS allowed plaintiffs a $752 deduction).

Plaintiffs are mistaken. The law does not require the IRS to give the type of detailed explanation plaintiffs demand. Indeed, the law does not require the notice of deficiency to explain how the IRS reached its determination at all. Shaeffer, 1994 WL 199226, at *13 (citation omitted).

Furthermore, regardless of the depth of the IRS's explanation, plaintiffs bear the burden of proving their entitlement to the deductions they claim. Id. (citing Deputy v. Du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Burnet v. Houston, 283 U.S. 223, 227 (1931)). In order to receive their claimed office expense deduction, plaintiffs must show that Olin's home office satisfies the exclusive use test. Plaintiffs fail to do so.

In addition, plaintiffs reasoning is flawed because they attempt to use the IRS's notice of deficiency about their original tax return to establish a right to the deductions claimed in their amended tax return. These two documents are not related. Plaintiffs amended tax return was filed many months after they received the IRS's notice of deficiency. Therefore, the notice of deficiency has no bearing on assessing the merits of the deductions in the amended return.

March 13, 2006 Notice of Disallowance

Plaintiffs argue that they are entitled to their office expense deduction on their amended return because the IRS's notice of disallowance was wrong. They contend that the IRS's reason for disallowance of their amended return—"Taxpayer did not submit additional documents" (Cordaro Decl. Ex. T. at US0135)—is false because plaintiffs submitted additional documents to the IRS, which largely consist of store receipts or credit card statements documenting various purchases. Plaintiffs contend that the IRS's erroneous explanation violated 26 U.S.C. § 6402(*l*), which provides: "In the case of a disallowance of a claim for refund, the Secretary shall provide the taxpayer with an explanation for such disallowance." 26 U.S.C. § 6402(*l*).[3]

The IRS's failure to give an accurate explanation for a refund disallowance does not entitle a taxpayer to the refund on the amount claimed. See Robertson v. United States, 147 Fed. Appx. 308, 310 (3d Cir. 2005) (per curiam). In fact, the IRS's explanation is irrelevant to this Court's determination of the taxpayer's entitlement to the deduction. "Ordinarily, in an action brought pursuant to 28 U.S.C. § 1346(a)(1) for a refund of taxes already paid to the government, the district court is required to redetermine the entire tax liability. *The factual and legal analysis employed by the Commissioner is of no consequence to the district court.*" R.E. Dietz Corp. v. United States, 939 F.2d 1, 4 (2d Cir. 1991) (internal citations omitted) (emphasis added). But there is a presumption of correctness to the IRS's determination, which means that "the taxpayer bears the burden of persuading the trier of fact that the assessment is incorrect." Id. Thus, on a motion for summary judgment, the taxpayer must point to some issue of fact that could allow the trier of fact to find in his favor.

---

[3] In a prior version of the statute, section 6402(*l*) was codified in section 6402(k).

In this case, there are no issues of fact tending to show that plaintiffs are entitled to their office expense deduction. The receipts plaintiffs submitted documenting their purchases of the items for Emily's Office and Emily's Studio only show that plaintiffs bought the items that they claim deductions for. They do not show that the items meet the requirements for a section 162 deduction. As noted earlier, the uncontroverted evidence is that Olin's home office does not qualify for a home office deduction.

**B.     Repairs and Maintenance (Line 21)**

Plaintiffs $8,475 repair and maintenance deduction for Olin's business consists of "renovation" work done to Emily's Office and Emily's Studio, radiator removal service for Emily's Office, "Office lock repair" and "Photo camera repair." Plaintiffs offer receipts for the work done or, in the case of the radiator removal service, a copy of the check used to pay the plumber. There is no evidence about the nature of the "renovation" work done. Nor is there evidence disclosing the purpose of the repair work or its connection to Olin's business.

A taxpayer may deduct repair and maintenance expenses used in conjunction with a business, subject to the conditions of section 162 (discussed supra). Deihl v. Comm'r, T.C. Memo. 2005-287, 2005 WL 3446081, at **11-13 (T.C. Dec. 15, 2005); see also, Leroy v. Comm'r, T.C. Summ. Op. 2008-62, 2008 WL 2264464, at *5 (T.C. June 3, 2008) (citing cases). Thus, in the case of repair and maintenance deduction to a home office, a taxpayer's office must satisfy the strictures of section 280A. Deihl, 2005 WL 3446081, at **11-13.

The majority of plaintiffs' repair and maintenance deduction suffers from the same defects as their office expense deduction. Plaintiffs fail to establish that Emily's Studio and Emily's Office satisfy the exclusivity requirement of section 280A. Accordingly, plaintiffs are

15

not entitled to a deduction for any repair work done on Emily's Office or Studio, including the renovation work, radiator removal service, and office lock repair.

In addition, plaintiffs' repair and maintenance deduction must be disallowed, because a taxpayer may not deduct capital improvements to his property; he may only deduct repairs. I.R.C. § 263(a); Woodward v. Comm'r, 397 U.S. 572, 575 (1970). In relevant part, section 263(a)(1) provides: "No deduction shall be allowed for—Any amount paid out . . . for permanent improvements or betterments made to increase the value of any property or estate." Id. The difference between a deductible repair and capital expenditure is

An expenditure which returns property to the state it was in before . . . and which does not make the relevant property more valuable, more useful, or longer-lived, is usually deemed a deductible repair. A capital expenditure is generally considered to be a more permanent increment in the longevity, utility, or worth of the property.

Leroy, 2008 WL 2264464, at \*5 (quoting Plainfield-Union Water Co. v. Comm'r, 39 T.C. 333, 337 (1962)). Thus, "If the repair is an improvement or replacement, or if it increases the property's value or substantially prolongs its useful life, it is capital in nature and is not currently deductible." Wolfsen Land & Cattle Co. v. Comm'r, 72 T.C. 1, 14 (1979).

There is no evidence that verifies the expenses deducted represent repair work and not capital improvements. The receipts plaintiffs submitted to the IRS provide no details about what work was done to Emily's Office or Emily's Studio. Therefore, plaintiffs fail to prove they are entitled to a deduction under section 162. See, e.g., Leroy, 2008 WL 2264464, at \*6.

Plaintiffs "Photo camera repair" deduction is disallowed because they fail to offer any evidence that substantiates the camera was an ordinary and necessary business expense of Olin's business under section 162(a).

16

## C.    Other Expenses (Line 27)

On their Amended Schedule C, plaintiffs claim a deduction of $20,415 in "Other Expenses," which consists of nineteen categories of claims. The Government concedes plaintiffs are entitled to deductions for (1) piano tuning ($285), (2) photocopies ($100), (3) the postal service ($115), (4) taxi rides ($430), (5) subway and bus rides ($75), (6) books and music ($409) and (7) opera performance attendance ($935). However, the Government argues that plaintiffs are not entitled to deductions on any of their remaining items. It maintains that plaintiffs fall short of carrying their burden of proving that the IRS's original allowance of $6,543 was wrong. Plaintiffs offer not a scintilla of evidence about their rights to the remaining deductions. Rather, plaintiffs argue that the IRS cannot apply the $6,543 figure from their original tax return to their amended tax return, because the amended return included items that were not in the original.

The Government has the better argument. As noted earlier, plaintiffs have the burden of proving their entitlement to a deduction. The IRS's prior analysis about plaintiffs' amended return is irrelevant to this Court's determination of whether plaintiffs carry their burden. See R.E. Dietz Corp, 939 F.2d at 4. Therefore, plaintiffs argument about the IRS's use of the $6,543 figure has no bearing on this Court's evaluation of plaintiffs' claim. The Court has considered each of the remaining twelve claims, and, for each of them, plaintiffs fail to raise a single issue of material fact about their right to a deduction.

### 1.    Concert Outfits

On their Amended Schedule C, plaintiffs report a deduction of $4,615 for Olin's concert outfits. According to Olin, a "concert outfit," which varies by the type of concert she is performing at, is a "real beautiful gown with jewelry, with everything, beautiful shoes," a "cocktail length" dress that is "special," or "it has to be not cocktail." (Cordaro Decl. Ex. B

17

(hereinafter "Olin. Dep.") at 62:14-63:23.) Jewelry, such as earrings, necklaces, bracelets, brooches, rings, and watches, is also included in Olin's vision of a "concert outfit." (Id. at 86:5-88:2.) Although Olin did not recall the precise outfits that she bought during the 2001 tax year, she testified that she typically bought them at high-end department stores (e.g., Bloomingdale's or Saks Fifth Avenue) or European boutiques. (Id. at 66:2-67:6.) She purchased the jewelry at department stores with jewelry counters (e.g., Lord & Taylor) or at jewelry boutiques. (Id. at 90:16-25.) Olin testified that she could never wear a concert outfit for any occasion other than a concert because the outfit had to be "special." (Id. at 64:24-65:15.) She testified that, in a different setting, the outfit would be considered "too pretentious." (Id. at 64:22-23.)

To support their entitlement to a "work clothes" deduction, plaintiffs only provide copies of their credit card statements for the year 2001. (See Cordaro Decl. Ex. P.) On these statements, plaintiffs made notations that identify which purchases were for Olin's outfits. The statements show the store Olin shopped at, but they do not provide any information about what she bought. In examining the credit card statements, Olin bought her concert outfits at Lord & Taylor, Banana Republic, Liz Claiborne, Cosmetics Plus, Nine West, Parade of Shoes, Strawberry, The Gap, Macy's East, Talbots, Rosaria Jewelry, Bloomingdale's, Henri Bendel and Ann Taylor. (See id.)

Under certain circumstances, expenses for work clothes are deductible, pursuant to I.R.C. § 162(a). For clothes to be deductible, they "must be of a type specifically required as a condition of employment, and they must not be adaptable to general usage as ordinary clothing." Donnelly v. Comm'r, 262 F.2d 411, 412 (2d Cir. 1959). In other words, a taxpayer may deduct the cost of clothing "only if: (1) the clothing is of a type specifically required as a condition of

employment, (2) it is not adaptable to general usage as ordinary clothing, and (3) it is not so worn." Pevsner v. Comm'r, 628 F.2d 467, 469 (5th Cir. 1980) (citing Donnelly, supra).

The Government agues that, because Olin bought her concert outfits at department stores, she should not be entitled to a deduction. It contends that, because these stores sell items for general use, plaintiffs cannot claim a deduction for clothing purchased at such stores. This argument misses the mark. Section 162(a) does not require that work clothing be purchased from a specific location, such as a specialty store. Rather, the merits of the deduction are resolved by assessing whether the clothing is adaptable to ordinary use. Deihl v. Comm'r, T.C. Memo 2005-287, 2005 WL 3446081, at *25 (T.C. Dec. 15, 2005). The store that the clothing is purchased from may aid in that assessment, but such information is not conclusive.

In Deihl, 2005 WL 3446081, at *25, the tax court denied the taxpayers' deduction for clothing because they failed to prove the clothing qualified for a deduction. The taxpayers ran a corporation that marketed a multi-vitamin spray. In marketing this product to prospective distributors, the taxpayers claimed they needed to wear outfits that conveyed an image of "extreme affluence and success." Id. at *2. The taxpayers claimed a deduction for such outfits because, "you couldn't wear [them] to the grocery store or the gym or anything." Id. at 24. In support of their claim, the taxpayers submitted pictures of each outfit they bought and credit statements documenting their purchases. Id. at **24-25. However, they did not show how the purchases documented in the credit statements corresponded to the outfits submitted.

The court rejected the taxpayers basis for a claim. The court held that it did not matter that the taxpayers believed they could only wear their outfits when doing business. Id. Rather, for the type of "formal clothes" taxpayers bought, the court emphasized that deductibility depended on whether the clothes fell into one of two categories: (1) formal clothes, which are not

19

deductible; and (2) clothes that trend toward being called "costume," which are deductible. Id. at
*25. The court did not spell out what type of clothing crosses the line from formal to costume.
It found that, in any event, the taxpayers fell short of carrying their burden of proof because they
failed to show how the specific charges they deducted corresponded to the articles of clothing
submitted to the court. Id. The evidence in the record was "simply insufficient" to permit a
deduction, even if the clothing could be labeled "costume." Id.

Here, plaintiffs evidence to support their claim is non-existent. There is no record of
what clothes Olin bought in 2001, nor does she remember what she bought. The only evidence
plaintiffs submit is credit card statements showing where Olin bought clothing. Most, if not all,
of those stores sell clothing that is adaptable to general use. Without providing evidence of the
exact outfits, Olin's self-serving assertion that the clothing bought from these stores only can be
worn at concerts is worthless.

Furthermore, Olin's own description of the outfits she buys suggests that they do not
qualify for a deduction. Beautiful gowns and cocktail dresses are a staple in many women's
closets, as are earrings, necklaces, bracelets, brooches, rings, and watches. Olin's belief that she
can only wear these items when she attends concerts and not in any other setting is irrelevant.
As long as other people would wear such clothing in a variety of settings, the clothes are not
deductible. Id.; Hynes v. Comm'r, 74 T.C. 1266, 1291 (1980). Other people wear fancy
clothing for a variety of reasons.[4]

---

[4] It is not even clear that Olin was singing at these concerts; she may have been sitting in the
audience!

20

## 2. Business Calls

Plaintiffs claim a deduction of $1,033 for business phone calls from their apartment. They assert that this figure represents 75% of the cost of all phone calls made. In support of this assertion, plaintiffs rely on their credit card statements, which purportedly represent the payment of their phone bills for 2001. They provide neither copies of the phone bills for that period nor evidence about the nature of the calls they are seeking to deduct. There is also no evidence about how many telephone lines plaintiffs have in their apartment.

Business telephone calls may be deductible as an ordinary and necessary business expense, pursuant to I.R.C. § 162. There are a some unique limitations on such a deduction, however. Section 262(b) provides: "For purposes of subsection (a), in the case of an individual, any charge (including taxes thereon) for basic local telephone service with respect to the 1st telephone line provided to any residence of the taxpayer shall be treated as a personal expense." I.R.C. § 262(b). The taxpayer also must provide some evidence about the business purpose of the telephone expense, otherwise it is deemed personal and not deductible. Richards v. Comm'r, T.C. Memo. 1999-163, 1999 WL 301646, at *8 (T.C. May 14, 1999).

Nothing in the record supports plaintiffs' claim that the calls for which a deduction is sought are deductible. The only evidence plaintiffs offer are credit card statements, which document charges and payments to two sources for their claimed business call deduction: (1) "MCIW IAP43062;" and (2) "Telemax Inc." (Cordardo Decl Ex. P.), and their assertion that these charges reflect business phone calls. Beyond their conclusory assertion, there is no evidence about the business purpose of the telephone charges or an explanation of how the 75% figure was calculated. Conclusory assertions supported by one-line credit card charges do not establish the business purpose of plaintiffs' telephone calls or enable the Court to determine

21

whether the requirements of section 262(b) have been met. Absent evidence demonstrating the
business nature of each deducted call (which would have to come by way of an affidavit of the
person who made the call), plaintiffs have failed to rebut the Government's argument that the
charges are disallowable.

### 3.    Laundry/Cleaning

Plaintiffs claim $278 in expenses for Olin's laundry and cleaning expenses for the outfits
she wears to concerts. These expenses are not deductible for the same reasons the outfits
themselves are not deductible. Boltinghouse v. Comm'r, T.C. Memo. 2007-324, 2007 WL
3145632, at *10 (T.C. Oct. 29, 2007); Hawbaker v. Comm'r, T.C. Memo. 1983-665, 1983 WL
14651, at *2 (T.C. Nov. 1, 1983).

### 4.    Business Dinners

Plaintiffs report $1,057 in expenses for business meals. They testified that this amount
constitutes 50% of their dining expenses for the 2001 tax year. (Tilman Dep. at 174:12-175:2;
Cordaro Decl. Ex. O at US0060-0061.) They do not submit a single receipt for these meals.
Rather, they offer their credit cards statements from 2001, which document charges to various
restaurants. Olin does not recall which dinners from 2001 were specifically business-related,
though she testified that she had such dinners once a week at Yale. (Olin Dep. at 84:18-85-18.)

This evidence is insufficient to substantiate a business meal deduction.

Certain business expense deductions under section 162 are subject to a heightened
substantiation requirement, pursuant to I.R.C. § 274. Deductions for meals or entertainment fall
under this section, see I.R.C. § 274(a)(1), and must be disallowed

> unless the taxpayer *substantiates by adequate records or by sufficient evidence
> corroborating the taxpayer's own statement*: (1) The amount of the expenses; (2)
> the time and place of the expense; (3) the business purpose of the expense; and (4)
> the business relationship to the taxpayer of the persons involved in the expense.

Gaylord v. Comm'r, T.C. Memo. 2003-273, 2003 WL 22172117, at *3 (T.C. Sept. 22, 2003)
(emphasis added); I.R.C. § 274(d); see also Oji v. Comm'r, T.C. Memo. 2008-085, 2008 WL
899235, at *4 (T.C. Apr. 3, 2008). "Unsupported, self-serving testimony and vague
approximations by taxpayers regarding expenditures for meals and entertainment generally will
not constitute sufficient substantiation." Petrocine v. Comm'r, T.C. Memo. 1997-189, 1997 WL
196954, at *4 (T.C. Apr. 23, 1997).

Plaintiffs' proof does not remotely approach the heightened standard. There is no
documentary evidence about the business purpose of the meal expenses, the individuals who
attended the business dinners and the relationship of the attendees to Olin's business. Olin could
not even recall a single business dinner she had in 2001. Section 274 does not permit such gaps
in proof. See Nitschke v. Comm'r, T.C. Memo. 2000-230, 2000 WL 1053852, at *3 (T.C. Aug.
1, 2000) (disallowing deduction for meals where taxpayer presented only copies of receipts and
checks that contained sporadic notations and partial details); Schnelten v. Comm'r, T.C. Memo.
1993-264, 1993 WL 208800, at *8 (T.C. June 15, 1993) (disallowing deductions for meals and
entertainment because taxpayer had no record of the individuals he entertained or the
relationship of the expenses to his business).

### 5. Gifts

Plaintiffs claim a $1,064 deduction for expenses related to gifts. Tilman testified that the
gifts were for Olin's "students, to the people who help her organize performances, to performers,
to stage directors. Everything what [sic] is related to the business." (Tilman Dep. at 173:7-12.)
However, he does not remember what the gifts were for or the specific people Olin gave the gifts
to. (Id. at 173:13-17.) Olin also does not recall what the gifts were for, but speculated that
"probably it was even connected to Russia, I think, because I went there. And it was—I bought

23

it for some anniversary. And, of course, it's somebody's birthday or somebody who won some competition. It could be a lot of—if my students win something, sure." (Olin Dep. 83:25-84:7.)

Business gifts are also subject to the heightened substantiation requirement of section 274. I.R.C. § 274(d)(3); Gaylord, 2003 WL 22172117, at *4. The taxpayer must show "the costs of the gifts, the dates the gifts were made, descriptions of the gifts, the business purposes of the gifts, and the business relationships between the taxpayer and the gift recipients." Boltinghouse, 2007 WL 3145632, at *8. Plaintiffs fail to do so. Once again, they merely refer to several entries on their credit card statements without supplying the additional information that section 274(d) requires.

Furthermore, plaintiffs' own testimony reveals that they have no recollection of what the specific gifts were for, to whom they were given or even what they were. Thus, nothing in the record supports a deduction for business gifts.

### 6. Haircuts/Manicures

Plaintiffs deduct $1,800 in expenses for Olin's haircuts and manicures. "Haircuts are nondeductible personal expenses even when required as a condition of employment." Boltinghouse, 2007 WL 3145632, at *10 (citing Hynes v. Comm'r, 74 T.C. 1266, 1291-92 (1980). The same is true for manicures, because such expenses are inherently personal in nature and suitable for general occasions. See Douglas v. Comm'r, T.C. Memo. 1979-224, 1979 WL 3287, at *1 (T.C June 6, 1979); see also Irwin v. Comm'r, T.C. Memo. 1996-490, 1996 WL 626334, at *7 (T.C. Oct. 30, 1996) (holding that personal grooming expenses are not deductible); Hynes, 74 T.C. at 1292.

### 7.    Airline Tickets

On their Amended Schedule C, plaintiffs report $760 in airline expenses. Olin testified that, in 2001, she purchased an airline ticket to Russia for an event to commemorate one of her former colleague's eight-year anniversary as a department head at an institute in Russia. (Olin Dep. at 69:17-70:10, 72:3-16, 73:6-8.) Olin testified that invitations to the event were sent to alumni of the institute all over the world, and that she was not compensated for her attendance at the reunion. (Id. at 69:17-71:20.) She testified that she did not perform at the event because "It wasn't a concert. It was a reunion . . . ." (Id. at 71:16-17.) Olin's credit card statement reflects an Aeroflot purchase on April 23, 2001, in the amount of $760. (Cordaro Decl. Ex. P at US0108.)

Section 162(a)(2) allows a taxpayer to deduct travel expenses "in the pursuit of a trade or business." I.R.C. § 162(a)(2). Travel expenses are subject to the heightened substantiation requirement of section 274(d). I.R.C. § 274(d); 26 C.F.R. § 1.274-5T(b)(2); see also Boltinghouse, 2007 WL 3145632, at **7-8. "The tax code precludes a deduction for . . . auto and travel expenses, unless a taxpayer substantiates by [1] adequate records or [2] by sufficient evidence corroborating the taxpayer's own statement the following five elements: the amount, date, time, place and *business purpose* of the expense." Reynolds v. Comm'r, 296 F.3d 607, 615 (7th Cir. 2002) (internal quotation and citations omitted) (punctuation in original) (emphasis added); see also 26 C.F.R. § 1.274-5T(b)(2).

Plaintiffs fail to show Olin's trip to Russia had a business purpose. Olin's own testimony about the trip to Russia—that it was for a reunion—undermines plaintiffs' contention that the trip was connected to Olin's business as a voice coach, piano accompanist and performer.

### 8.      Recording Equipment

Plaintiffs claim a deduction of $1,443 for the cost of recording equipment. (Cordaro Ex.

R at US0081.)  The recording equipment consists of a CD player, tape recorder, DVD player and

television. (Tilman Dep. at 177:15-16.)  As discussed earlier, Tilman testified that he and his

wife watched television in Emily's Studio, using the same television that Olin uses for her

business. (Id. at 177:20-178:4.)  Olin testified that she has turned on the recording equipment to

listen to music for pleasure. (See Olin Dep. at 93:15-18.)

The Government agues that plaintiffs' deduction for recording equipment is not allowed

because the equipment is not strictly used for business purposes.  The Government is correct.

Plaintiffs testified that they used the recording equipment for both business and personal

purposes.  Therefore, their deduction is not allowed.  See Gaylord, 2003 WL 22172117, at **3-4.

### 9.      Cellular Phones

Plaintiffs claim a deduction of $830 for cellular phone calls. (Cordaro Decl. Ex. R at

US0081.)  In support of this deduction, plaintiffs again refer to several charges on their credit

card statements that reflect charges to "Sprint PCS," "SPCS" or "SprintPCS" for various

amounts. (Cordaro Decl. Ex. O at US0064, Ex. P.)  Plaintiffs do not provide any evidence about

the business purpose of these charges.  Olin merely testified that she used her cell phone for both

business and personal purposes. (Olin Dep. at 74:13-75:10.)

Expenses for cellular phones fall within the strict substantiation requirements of section

274 of the Internal Revenue Code.  I.R.C. §§ 274(d)(4), 280F(d)(4)(A)(v); Gaylord, 2003 WL

22172117, at *4.

> Cellular phones are classified as "listed property" under section 280F(d)(4)(A)(v),
> and such expenses must be substantiated by adequate records or sufficient
> evidence which corroborate the taxpayer's own testimony, including: (1) The
> amount of the expenditure or use based on the appropriate measure; (2) the time

26

and place of the expenditure or use; and (3) the business purpose of the
expenditure or use.

Tarakci v. Comm'r, T.C. Memo. 2000-358, 2000 WL 1727374, at *11 (T.C. Nov. 21, 2000).

Plaintiffs are not entitled to deduct expenses for Olin's cellular phone usage, since they
failed to provide sufficient evidence to corroborate their assertion that the cell phone was used
for business purposes. See, e.g., Kinney v. Comm'r, T.C. Memo. 2008-287, 2008 WL 5330815,
at *8 (T.C. Dec. 22, 2008). In Kinney, the tax court denied a cellular phone deduction because
the taxpayer failed to offer any evidence that showed which charges on his cellular phone bill
were for personal use and which were for business. Id. The taxpayer had provided copies of his
cellular phone bill, but the tax court ruled that the bill alone was not enough evidence to show an
entitlement to a deduction. In this case, plaintiffs do not even provide a cellular phone bill, nor
do they provide any evidence about the business purpose of any cell phone calls. See also
Gaylord, 2003 WL 22172117, at *4 (denying a cellular phone deduction when the taxpayer
provided copies of checks made payable to a cellular phone service provider).

### 10. Computer and Internet

Plaintiffs report $2,573 in computer and internet expenses. (Cordaro Decl. Ex. O at
US0064-65.) Again, to support their claimed deduction, plaintiffs refer to charges on their credit
card statements. The credit card statements show 10 charges of $21.95 to "MSN Online
Billing." (Cordaro Decl. Ex. P.) The credit card statements also show a charge of $2,353.78 to
"Dell Marketing L.P" for a computer. (Id.) Tilman testified that he would use the computer
occasionally. (Tilman Dep. at 53:4-6.) There is no evidence in the record about the nature of the
plaintiffs' computer and internet use and their relationship to Olin's business.

Generally, expenses for computers or peripheral equipment are subject to the heightened
substantiation requirements of section 274. See I.R.C. §§ 274(d)(4), 280F(d)(4)(A)(iv).

However, if the computers or peripheral equipment are used exclusively at a regular business establishment, then the heightened substantiation requirement does not apply. I.R.C. § 280F(d)(4)(B); Whalley v. Comm'r, T.C. Memo. 1996-553, 1996 WL 687033, at *9 ( T.C. Dec. 2, 1996). "A home office is treated as a regular business establishment provided the office meets the requirements of section 280A(c)(1)." Whalley v. Comm'r, T.C. Memo. 1996-553, 1996 WL 687033, at *9 ( T.C. Dec. 2, 1996). As discussed in Part II.A., supra, Olin's office does not satisfy the requirements of section 280A(c)(1). Therefore, the requirements of section 274 apply to plaintiffs' computer expense deduction.

Plaintiffs fail to establish that their computer purchase qualifies for a tax deduction, because they present no evidence about the business purpose of the purchase. See I.R.C. § 274(d); Verma v. Comm'r, T.C. Memo. 2001-132, 2001 WL 617220, at *6 (T.C. June 6, 2001).

Internet expenses are not subject to the heightened substantiation requirement. Rather, the tax code characterizes such expenses as utility expenses, which are deductible as ordinary business expenses, pursuant to section 162. See, e.g., id. at *5; Riley v. Comm'r, T.C. Memo. 2007-153, 2007 WL 1712775, at *5 (T.C. June 14, 2007). Even under this more lenient standard, plaintiffs are not entitled to a deduction for their internet expenses. Plaintiffs fail to provide any evidence that the internet expenses they seek to deduct were incurred in the normal course of Olin's business as a voice coach, piano accompanist and performer. See Verma, 2001 WL 617220, at *5; Riley, 2007 WL 1712775, at *6.

28

### 11.    Membership

Plaintiffs claim a $2,569 deduction for "Membership." (Cordaro Decl. Ex. R at US 0081.)

Olin testified that this deduction represented the fees she paid as a member of the LA Weight

Loss Club. (Olin Dep. at 76:12-77:4.) Olin testified that she joined the program to lose weight

because she wanted to feel better about herself on stage.

> I did it not because I was afraid that somebody would fire me, but just I want to
> be free on the stage. And on the stage I want to think about the music but not
> about myself. And you know how you feel sometimes like complex, that you feel
> bad and doesn't let you move on with something? So I did it for stage. I really
> did it for stage.

(Id. at 82:12-19.) There is no evidence that Olin participated in a weight-loss program for

medical reasons.

Participation in a weight loss program can be a deductible expense when it is done for

medical reasons, pursuant to I.R.C. § 213. However, Olin's membership to a weight loss club is

not a deductible expense. It is a personal expense. She admits she joined the weight loss club so

she would not feel bad about her appearance. "The cost of an individual's participation in a

weight reduction program that is not for the purpose of curing any specific ailment or disease,

but for the purpose of improving the individual's appearance, health, and sense of well being, is

not deductible as a medical expense." Rev. Rul. 79-151, 1979-1 C.B. 116; see also Rev. Rul.

2002-19, 2002-1 C.B. 778.

### 12.    Video Rental

Plaintiffs claim a deduction of $44 for video rentals. (Cordaro Decl. Ex. R at US0081.)

Plaintiffs provide copies of their credit cards statements, which show charges to "Champagne

Video." (Cordaro Decl. Ex. P.) Tilman testified that his wife rented old movies to obtain "some

type of music that had been performed in middle thirties, forties, something that she had wanted

to use to restore to do something." (Tilman Dep. at 182:23-183:1.) The video rentals included
"regular movie with famous singers or classical performance in different languages . . . ." (Id. at
183:9-11.)

Any activity "generally considered to constitute entertainment" is subject to the
heightened substantiation requirements of section 274. I.R.C. §§ 274(a)(1)(A), 274(d)(2). In
addition to meeting the requirements of section 274(d), plaintiffs must show "that the item was
directly related to . . . the active conduct of the taxpayer's trade or business." I.R.C.
§ 274(a)(1)(A). It should go without saying that renting movies is considered "entertainment."

Plaintiffs fail to provide any support for their claimed entitlement to a deduction for the
video rentals. There is nothing in the record that shows that the videos were for Olin's business,
nor is there any evidence that the videos were in fact movies from the 1930s or 1940s that had to
do with music. The Court does not even know what the videos are.

## III. Plaintiffs Are Not Entitled to a Deduction For Their Donation of Furniture

On their Amended Form 1040, plaintiffs claim itemized deductions of $39,026. (Cordaro
Decl. Ex. L at US0077.) The IRS adjusted this amount to $23,763. (Cordaro Decl. Ex. H at
US0032.) The discrepancy pertains to plaintiffs' non-cash gifts to charity during the 2001 tax
year. Plaintiffs claimed a deduction of $14,299 on their amended Schedule A for non-cash gifts,
of which the IRS allowed $997. (Cordaro Decl. Ex. S at US0078; Ex. H at US0036.) Plaintiffs'
non-cash gifts to charity deduction breaks down as follows:

| Type of Donation | Amount | IRS Action |
|---|---|---|
| Furniture | $11,995 | Disallowed |
| Goodwill | $1,306 | Disallowed |
| Children's Day Treatment | $ 307 | Allowed |
| Children's Day Treatment | $ 505 | Allowed |
| Children's Day Treatment | $ 185 | Allowed |
| Total | $14,298 | |

30

(Cordaro Decl. Ex. Q at US0068-71, US0075.)[5]

Section 170 of the I.R.C. allows a taxpayer to deduct any charitable contribution, subject to certain record-keeping requirements. I.R.C. § 170. The tax code's record-keeping requirements for charitable donations may be divided into three tiers, which require greater substantiation for each tier. First, for any non-monetary contribution after December 31, 1982 that is less than $500, the taxpayer must maintain a receipt from the donee—unless impractical under the circumstances—showing the name of the donee, the date and location of the contribution and a description of the property in sufficient detail under the circumstances. 26 C.F.R. § 1.170A-13(b)(1).[6] Second, for any non-monetary contributions after December 31, 1982, in excess of $500, the taxpayer must maintain written records showing, *inter alia*, (1) the manner and acquisition of the item, and (2) the approximate date of acquisition. 26 C.F.R. § 1.170A-13(b)(3)(i). Third, for any non-monetary contributions after December 31, 1984, in excess of $5,000, the taxpayer must obtain a qualified appraisal for the donated property and attach a fully completed appraisal summary to the tax return. 26 C.F.R. § 1.170A-13(c)(2)(i)(A).

The charitable contribution regulation provides further that "the amount claimed or reported as a deduction for an item of property is the aggregate amount claimed or reported as a deduction for a charitable contribution under [I.R.C. § 170] for such items or property and all *similar items of property (as defined in paragraph (c)(7)(iii) of this section)* by the same donor for the same taxable year . . . ." 26 C.F.R. § 1.170A-13(c)(1)(i) (emphasis added).

---

[5] The total amount of these deductions is $14,298, one dollar less than plaintiff's entry on their amended Schedule A. (See Cordaro Decl. Ex. S at US0078.) The differential presumably results from an incorrect rounding to the nearest whole dollar.

[6] Recent amendments to the Internal Revenue Code have changed some of the substantiation requirements for charitable donations. See I.R.C. § 170(f)(8), (11). The Government concedes that, for the purposes of its motion, the statutes and regulations that were in effect in 2001 apply.

For example, if a donor claims on her return for the year deductions of $2,000 for books given by her to College A, $2,500 for books given by her to College B, and $900 for books given by her to College C, the $5,000 threshold of paragraph (c)(1) of this section is exceeded. Therefore, the donor must obtain a qualified appraisal for the books and attach to her return three appraisal summaries for the books donated to A, B, and C.

26 C.F.R. § 1.170A-13(c)(7)(iii)

Furniture is a category of "similar items of property," pursuant to 26 C.F.R. § 1.170A-13(c)(7)(iii). Thus, plaintiffs' donations of furniture must be aggregated in order to determine whether their contribution exceeds $5,000. 26 C.F.R. § 1.170A-13(c)(1)(i). Plaintiffs' own estimates place the value of their furniture donation at $11,995, well over the $5,000 threshold. (Cordaro Decl. Ex. Q at US0075.) Accordingly, the third tier of substantiation—the appraisal requirement—applies to plaintiffs' donation. 26 C.F.R. § 1.170A-13(c)(2)(i)(A).

It is undisputed that plaintiffs did not have their furniture appraised before donating it. (Tilman Dep. at 157:11-13.) For this reason, plaintiffs are not entitled to a deduction for the donation of their furniture. See, e.g., Stephenson Fast v. Comm'r, T.C. Memo. 1998-272, 1998 WL 419424, at *4 (T.C. July 27, 1998) (disallowing a deduction for a $6,000 donation of clothing because the taxpayer failed to obtain an appraisal of the clothing before donating it).

## CONCLUSION

For the reasons stated above, the Government's motion for partial summary judgment is granted.

This constitutes the decision and order of the Court.

Dated: August 3, 2009

_____
U.S.D.J.